

'U S DISTRICT COURT
EASTERN DISTRICT OF LA

**NOV 0 1 2004**

2004 NOV - 1  PM 4: 39

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CLAYTON WILLIAMS ENERGY, INC., ET AL.**                    **CIVIL ACTION**

**VERSUS**                                                              **No. 03-2980**

**NATIONAL UNION FIRE INSURANCE**                         **SECTION: I/4**
**COMPANY OF LOUISIANA, ET AL.**

## ORDER AND REASONS

On October 23, 2003, plaintiffs, Clayton Williams Energy, Inc. ("CWE") and its insurer,

Scottsdale Insurance Company ("Scottsdale"), filed this action pursuant to the Declaratory Judgment

Act, 28 U.S.C. §§ 2201-02.[1] CWE and Scottsdale (collectively referred to as "CWE") seek various

declarations with respect to the obligation of defendant, Frank's Casing Crew & Rental Tools, Inc.

("Frank's"), to procure insurance coverage and declarations pertaining to the coverage afforded by a

policy of insurance issued by defendant, National Union Fire Insurance of Louisiana ("National

Union") to Frank's.[2]  This Court has jurisdiction over CWE's claim against Frank's pursuant to this

---

[1] 28 U.S.C. § 2201(a) provides in pertinent part:
> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

[2] *See* Rec. Doc. No. 1, complaint, ¶¶ 18-22.  Additionally, plaintiffs alleged a claim for penalties and attorney's fees as a result of National Union's alleged arbitrary and capricious denial of their claim for coverage.  Subsequent to the filing of the parties' summary judgment motions, the parties entered into a joint stipulation in which CWE, *inter alia*, waived its bad faith claims asserted against National Union. *See* Rec. Doc. No. 35.

___ Fee_____
___ Process____
_X_ Dktd__/9___
___ CtRmDep____
___ Doc. No._____

**DATE OF ENTRY**

NOV 0 2 2004

Court's maritime jurisdiction. 28 U.S.C. § 1333(1). This Court has jurisdiction over CWE's claim

against National Union pursuant to this Court's diversity jurisdiction. 28 U.S.C. § 1332.

Before the Court are motions for summary judgment filed on behalf of CWE,[3] National

Union,[4] and Frank's,[5] seeking judgments as a matter of law in their favor. The motions are opposed.[6]

For the following reasons, the motion for summary judgment filed on behalf of CWE is **GRANTED.**

The motion for summary judgment filed on behalf of Frank's is **DENIED.** The motion for summary

judgment filed on behalf of National Union is **DENIED.**

## *BACKGROUND*

CWE is in the business of drilling oil and gas wells. On or about January 1, 1995, CWE and

Frank's entered into a master service contract ("MSC") pursuant to which Frank's agreed to provide

casing services in connection with CWE's oil and gas drilling business.[7] Paragraphs 7.1 through 7.5

of the MSC pertain to mutual indemnity obligations between Frank's and CWE.[8]  Paragraph 7.2 of

---

[3]Rec. Doc. No. 12.

[4]Rec. Doc. No. 14.

[5]Rec. Doc. No. 18.

[6]Specifically, the motion for summary judgment filed on behalf of plaintiffs, CWE and Scottsdale, is opposed separately by Frank's and National Union. Rec. Doc. Nos. 19, 22. The motions for summary judgment filed on behalf of Frank's and National Union are opposed jointly by CWE and Scottsdale. Rec. Doc. Nos. 20, 21. However, the motion for summary judgment filed on behalf of Frank's is unopposed by National Union and the motion for summary judgment filed on behalf of National Union is unopposed by Frank's.

[7]Rec. Doc. No. 12, Ex. A., MSC. "'Casing' is an activity performed during the drilling for oil, whether onshore or offshore; it involves the 'welding together and hammering of pipe into the subsurface of the earth to create a permanent construction.'" *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 495-96 (5th Cir. 2002)(citation omitted).

[8]*Id.* Paragraph 7.1 of the MSC provides:

In order to allocate respective responsibilities of Contractor [CWE] and Subcontractor [Frank's] for liabilities arising out of personal injury or property damage, it is agreed between Contractor and Subcontractor that certain responsibilities and liabilities for personal injuries and property damage arising out of the performance of this Contract should be allocated between them in order to avoid protracted litigation between Contractor and Subcontractor along with the

2

the MSC requires Frank's to indemnify CWE or its invitees.[9]  Paragraph 6.1 of the MSC requires Frank's to obtain certain liability insurance coverage "[w]ithout affecting the indemnity obligations or liabilities" of Frank's.[10]  Paragraph 6.2 requires Frank's to obtain from its insurers "a waiver of subrogation against [CWE] and any operator or owner for whom [CWE] is performing operations or services in all of the insurance policies set forth in this Section . . . ."[11]

Paragraph 6.3 contains an "additional insured" clause providing, "[a]dditionally, to the extent [Frank's] assumes liability hereunder, and agrees to indemnify [CWE], [CWE] shall be named an additional insured in all such insurance policies . . . with all such insurance being primary to any insurance of [CWE] that may apply to an [sic] such occurrence, accident or claim."[12]

---

associated legal expenses and so that insurance or self-insurance may be arranged by each party as necessary to protect them against these exposures to loss.  The following sets out the specifics of the agreements between Contractor and Subcontractor as to the allocation of the responsibilities and liabilities.

*Id.* (alteration supplied).  Paragraph 7.4 provides that if the contract is subject to the indemnity limitations of Chapter 127 of the Texas Civil Practices and Remedies Code, and so long as the limitations are in force, each party's obligation to indemnify the other party is limited to the extent allowed by Texas law and will be supported by available liability insurance coverage.  Paragraph 7.5 provides that if a court determines that the monetary limits of insurance coverage or the indemnity obligation assumed by the parties (which each party agrees will be supported by insurance coverage) exceeds the maximum limits "under applicable law," each party agrees that the insurance coverage "shall automatically be amended to conform to the maximum monetary limits permitted under such law."  *See id.*

[9]The relevant portions of the indemnification provision are set forth in the law and analysis section of this opinion.

[10]Paragraph 6.1 provides that Frank's is responsible to obtain insurances coverages as specified in Exhibit A to the MSC.  *See id.*, ¶ 6.1.  Pursuant to Exhibit A of the MSC, Frank's was required to maintain, *inter alia*, general liability insurance coverage in the amount of $2,000,000 in the aggregate, with each occurrence covered up to $1,000,000.  *See id*, Ex. A.

[11]*Id.*, ¶ 6.2.

[12]*Id.*, ¶ 6.3.  The MSC also contains the following "special provision" pertaining to indemnity:
In instances of damages resulting from the sole or concurrent negligence of the indemnitee, the indemnity provisions set forth in Paragraphs 7.2 and 7.3 of this Contract are agreed to be mutual and are to be supported by liability insurance in the amount of $5,000,000; and the indemnity obligation in such instances shall be limited to the extent of such liability insurance coverage, but in all other instances the indemnity shall be unlimited.
*Id.*, ¶ 20.2.

3

Pursuant to the MSC, Frank's named CWE as an additional insured under a policy of insurance issued by National Union to Frank's.[13] The National Union policy contains an additional insured endorsement which amends Section II of the policy, entitled "Who Is An Insured," and it provides coverage for "any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization . . . ."[14]

On November 10, 2000, in connection with its oil and gas well drilling business, CWE entered into a Daywork Drilling Contract with Parker Drilling Offshore USA, L.L.C. ("Parker"), pursuant to which CWE agreed to defend and indemnify Parker for any claims filed against it by CWE's contractors' employees.[15] On November 28, 2000, Chad Webb, a longshoreman employed by Frank's, was allegedly injured while working in the course and scope of his employment as a tong operator aboard Parker Rig No. 21-B, an inland barge located within Louisiana territorial waters. As a result of his injuries, Webb filed a lawsuit in a Louisiana state court. The defendants in the state court action were, *inter alia*, numerous Parker entities and CWE.[16] In Webb's state court petition, Webb alleged that he was injured when he was struck in the head by equipment which fell from the derrick

---

[13]*See* Rec. Doc. No. 12, CWE's statement of uncontested material facts, at ¶ 12; Rec. Doc. No. 14, National Union's statement of uncontested material facts, ¶ 3; Rec. Doc. No. 18, Frank's statement of uncontested material facts, ¶ 6.

[14]*Id.*, Ex. B., Nation Union policy No. 544-05-98 RA ("Policy"), additional insured endorsement. The additional insured endorsement also provides:
> However, the insurance provided will not exceed the lesser of:
> 1. The coverage and/or limits of this policy, or
> 2. The coverage and/or limits required by said contract or agreement.

*Id*

[15]*Id.*, Ex. D., CWE/Parker contract, ¶ 14.9.

[16]*See id.*, Ex. E, Chad Webb's state court complaint, at 1.

4

of the Parker vessel.[17]

In connection with Webb's state court lawsuit, CWE assumed the defense and indemnity obligations owed to Parker pursuant to the CWE/Parker contract for Webb's claim against Parker. During the course of the state court lawsuit, CWE made a demand to Frank's and National Union for defense and indemnity with respect to Webb's claim against Parker. Pursuant to the MSC and the additional insured coverage provided by the National Union policy, National Union provided a defense to CWE, but refused to provide indemnity or insurance coverage to CWE for Webb's claim against Parker. Subsequently, CWE mediated Chad Webb's claim against Parker and settled Webb's claim for $907,500.[18]

On October 23, 2003, CWE filed the instant action seeking declarations that (1) the MSC obligated Frank's to procure insurance to the extent that Frank's assumed liability and agreed to defend and indemnify CWE and CWE's invitee, Parker; (2) the policy of insurance issued by National Union to Frank's, consistent with Frank's obligation, provides coverage for Chad Webb's claims against Parker; (3) CWE is an additional insured pursuant to the National Union policy and such policy provides additional insured coverage for CWE's contractual obligation to defend and indemnify Parker with respect to Webb's claims against Parker; and, alternatively (4) if the National Union policy does not provide coverage for Webb's claims against Parker, Frank's breached its obligation to procure the insurance required by the MSC.[19]

---

[17]*Id.* at ¶ 6.

[18]*See id.*, Ex G, affidavit of Udayan De, ¶¶ 3-4.

[19]Rec. Doc. No. 1, ¶¶ 18-21. Although the complaint seeks only declaratory relief, CWE's motion for summary judgment and its proposed order submitted to this Court make clear that CWE not only seeks declarations pertaining to the parties' rights and obligations, but it also seeks a monetary judgment in the amount of funds it expended by defending and indemnifying Parker Drilling Co. in the underlying state court action. Therefore, this action is not strictly a

In CWE's motion, it argues that (1) Texas law applies to the MSC pursuant to the parties' contractual choice of law and that the indemnity obligations in the MSC are valid pursuant to Texas law; (2) that the additional insured provision of the MSC required Frank's to obtain insurance coverage in favor of CWE for Frank's assumption of the tort liability of CWE's alleged invitee, Parker; (3) that the MSC is an "insured contract" pursuant to the terms of the National Union policy and, therefore, the policy provides coverage for Frank's direct contractual obligation to indemnify CWE's invitee, Parker; or, alternatively (4) the National Union policy provides coverage to CWE, pursuant to its status as additional insured, for CWE's contractual obligation to indemnify Parker; and, in the further alternative, (5) if the National Union policy does not provide coverage to CWE for its indemnification of Parker, Frank's breached its obligation pursuant to the MSC to procure such insurance coverage.

In Frank's motion for summary judgment, it argues that the defense and indemnity obligations in the MSC are governed by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-50, not Texas law, and that the obligations to indemnify CWE and its alleged invitee, Parker, are invalid pursuant to section 905(b) of the LHWCA. Alternatively, Frank's argues that if Frank's has an obligation to indemnify CWE and its invitees and such obligations are enforceable pursuant to Texas law, Parker does not qualify as an "invitee" entitled to indemnity. Frank's also argues that CWE is not entitled to indemnity or additional insured coverage for CWE's contractual obligation to indemnify Parker pursuant to the CWE/Parker contract and that Frank's did not breach its obligation in the MSC to provide additional insured coverage to CWE.

---

declaratory judgment action. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 539-40 (5th Cir. 2002)(holding that a district court erred in classifying an action as a "declaratory judgment action" when plaintiff has also requested monetary relief). Accordingly, this Court treats this action as a coercive action in which part of the relief requested is declaratory in nature.

In National Union's motion for summary judgment, it argues that the National Union Policy does not afford coverage for CWE's contractual liability to Parker, Frank's did not breach the MSC by failing to procure the insurance required by that agreement, and even if Frank's breached the MSC, the National Union policy does not provide coverage for breach of contract.

## LAW AND ANALYSIS

I.   *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986). That burden is not satisfied by creating merely some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated assertions or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted). The materiality of facts is determined by "the substantive law's identification of which facts are critical and which facts are irrelevant." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). Therefore, a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587,

7

106 S. Ct. at 1356 (internal quotation omitted).

II.    *Frank's Indemnity Obligation/Choice of Law*

There is no dispute that the MSC, which is an agreement to provide casing services on drilling vessels in navigable waterways, is a maritime contract. *See Campbell v. Sonat Offshore Drilling, Inc., (Campbell I)*, 979 F.2d 1115, 1123 (5th Cir. 1992). Additionally, it is undisputed that Webb was a longshoreman covered by the LHWCA. Additionally, CWE acknowledges that because the contract between CWE and Parker is in the nature of a time charter for a drilling barge, both CWE and Parker are considered "vessels" pursuant to the LHWCA and are subject to liability pursuant to section 905(b). *See* 33 U.S.C. § 902(21)[20]; *Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1041 (5th Cir. 1983)(noting that a time charterer is normally covered under the broad definition of "vessel owner" pursuant to section 902(21) and subject to potential liability under section 905(b)); *Randall v. Chevron USA, Inc.*, 788 F. Supp. 1398, 1404-05 (E.D.La. 1992).

The Fifth Circuit has stated that "[t]he interpretation of an indemnity clause in a maritime contract is ordinarily governed by federal maritime law rather than by state law." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981); *see also Stoot v. Fluor Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988)("In the absence of a choice of law clause, the construction of indemnity provisions in a contract involving maritime obligations is governed by maritime law."). However, if a maritime contract contains a choice of law clause, the state law chosen by the parties

---

[20]Section 902(21) of the LHWCA provides:

> Unless the context requires otherwise, the term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.

will apply "'*unless* [1] the state has no substantial relationship to the parties or the transaction *or* [2] the state's law conflicts with the fundamental purposes of maritime law.'" *Campbell I*, 979 F.2d at 1126 (quoting *Stoot*, 851 F.2d at 1517)(italics and alterations in original).

The MSC contains a choice of law clause that provides that "[t]his Contract shall be governed, construed and interpreted in accordance with the laws of The State of Texas."[21] Neither party disputes that CWE is located in Texas and, therefore, Texas has a substantial relationship to the parties involved in this action. The dispute centers around whether there is a conflict between Texas law and federal law with respect to the validity of the indemnification obligation found in paragraph 7.2 of the MSC. Specifically, CWE contends that the choice of law clause should be enforced because there is no conflict between section 127.005(b) of the Texas Oilfield Anti-Indemnity Act ("TOIA"), Tex. Civ. Prac. & Rem. Code § 127.005, and section 905(b) of the LHWCA. Frank's argues that the indemnity agreement in the MSC is void pursuant to section 905(b) and, to the extent that the TOIA permits such indemnity agreements, Texas law directly conflicts with a fundamental purpose of maritime law.

Paragraph 7.2 sets forth Frank's indemnification obligation as follows:

> Subcontractor [Frank's] agrees to protect, defend, indemnify and hold harmless Contractor [CWE], its officers, directors, employees or their invitees, and any customer for whom Contractor is performing services, from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault . . . of any party or parties . . . arising in connection herewith in favor of Subcontractor's employees . . . on account of bodily injury . . . .[22]

---

[21]Rec. Doc. No. 12, Ex. A, ¶ 10.3.

[22]*Id.*, ¶ 7.2 (strikeout in original).

9

For purposes of argument with respect to the choice of law, Frank's assumes *arguendo* that Parker qualifies as CWE's invitee. However, Frank's ultimately disputes whether Parker is an invitee within the meaning of the MSC. Because Parker's status as an invitee is relevant to this Court's ultimate disposition of this action, the Court will address this threshold issue.

A.    *Parker's Invitee Status*

Pursuant to Texas law, an invitee is a person who enters the premises of another in answer to an express or implied invitation from the owner or occupier for their mutual benefit. *See Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 795-96 (5th Cir. 1992); *Loomis Int'l, Inc.*, 1998 Tex. App. LEXIS 4802, at *9 (Tex. Ct. App. Aug. 6, 1998). Similarly courts in this circuit have defined an invitee for purposes of a maritime contract as "'a person who goes onto premises with the express or implied invitation of the occupant, on business of the occupant or for their mutual advantage.'" *Reynaud v. Rowan*, 1999 WL 65022, at *3 (E.D.La. Feb. 5, 1999)(quoting *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 894 (5th Cir. 1985) and applying the *Blanks* definition as federal maritime law). It is undisputed that Parker's barge, upon which Webb was injured, was present in Sweet Lake Field in connection with its contract with CWE to provide such a drilling barge. Therefore, it is clear that Parker was performing services at the express invitation of CWE and that such services were performed for Parker's and CWE's mutual advantage. Accordingly, Parker was CWE's invitee at the time of Webb's injury.

Frank's contends that the MSC is ambiguous with respect to whether there was any intent to include Parker within the definition of an invitee. Frank's argues that because the indemnity provision of the MSC refers to "invitees," "contractors," and "subcontractors" as separate entities, the language of the MSC is ambiguous. Specifically, Frank's contends that the language of the MSC implies that

10

any entity having a direct contractual relationship with CWE would be a "contractor" or "subcontractor" instead of an "invitee."

In *Reynaud*, the court held that the use of the term "invitee" in a maritime contract's indemnity provision did not conflict with other provisions in the contract specifically addressed to the indemnification of "contractors." *See Reynaud*, 1999 WL 65022, at *3. The Court rejected the defendant's argument that construing the contract's indemnification of "invitees" to include subcontractors rendered the contract's specific reference to indemnification of "contractors" superfluous. *Id.* Specifically, the court held that the indemnification of a party's invitees "expands the scope of the parties covered under the indemnity agreement." *Id.* Similarly, the Fifth Circuit has explicitly held that one may be both an "invitee" and a "contractor"; the terms are not mutually exclusive. *See Mills v. Zapata Drilling Co.*, 722 F.2d 1170, 1174 (5th Cir. 1983).[23] Accordingly, the fact that the MSC indemnification provision refers to "invitees," "contractors," and "subcontractors" in separate categories does not render the provision ambiguous. Rather, the term "invitees" simply includes a broader category of persons or entities than the term "subcontractors" or "contractors." *See Reynaud*, 1999 WL 65022, at *3. Therefore, the Court rejects Frank's contention that the indemnity provision as applied to Parker is ambiguous.

---

[23]Although the *Mills* court applied the Louisiana definition of "invitee," *see Mills*, 722 F.2d at 1174, that definition was applied in *Reynaud* as federal common law. 1999 WL 65022, at *3. "In Louisiana, an 'invitee' is a person who goes onto premises with the expressed or implied invitation of the occupant, on business of the occupant or for their mutual advantage." *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 894 (5th Cir. 1985). Addressing the argument that the term "invitee" was ambiguous, the *Mills* court stated:

> It is preposterous for Louisiana to argue that the indemnity agreement is ambiguous. The agreement fits like a French glove. As any wearer would know, it covers an invitee (which all parties agree that Zapata was) even if he is also a contractor . . . . The opposite contention is frivolous.

*Mills*, 722 F.2d at 1174. In the context of the present dispute, there is no substantive difference between the federal, Texas, or Louisiana definitions of an "invitee."

B.    *Whether Texas Law Conflicts with a Fundamental Purpose of Maritime Law*

As a general rule, the Texas Oilfield Anti-Indemnity Act voids indemnity provisions, such as those found in paragraphs 7.2 and 7.3, that purport to indemnify a party against liability caused by the indemnitee's sole or concurrent negligence and arising from personal injury, death, or property damage. *See* Tex. Civ. Prac. & Rem.Code Ann. § 127.003; *Greene's Pressure Testing & Rentals, Inc. v. Flournoy Drilling Co.*, 113 F.3d 47, 50 (5th Cir. 1997). There is, however, a statutory exception that permits indemnity provisions that are supported by liability insurance satisfying the dictates of section 127.005. *Greene's*, 113 F.3d at 50.  Section 127.005 provides in pertinent part:

> (a) This chapter does not apply to an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor subject to the limitations specified in Subsection (b) or (c).
> (b) With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee.

Tex. Civ. Prac. & Rem. Code Ann. § 127.005.[24]

The MSC contains two provisions addressing the parties' agreement with respect to procuring insurance for the purpose of supporting the indemnity obligations contained in paragraphs 7.2 and 7.3.  Paragraph 7.4 provides that in the event that the MSC is subject to the indemnity limitations of the TOIA, each party agrees "to support this indemnity agreement by available liability insurance coverage."[25]  Paragraph 20.2 provides that "[i]n instances of damages resulting from the sole or concurrent negligence of the indemnitee, the indemnity provisions set forth in Paragraphs 7.2 and 7.3

---

[24]Subsection (c) deals with limits of insurance with respect to unilateral indemnity obligations.  Neither party contends that the MSC contains a unilateral indemnity obligation.

[25]*Id.*, ¶ 7.4.

12

of this Contract are agreed to be mutual and are to be supported by liability insurance in the amount of $5,000,000 . . . ."[26]   Assuming that paragraphs 7.4 and 20.2 are sufficient to satisfy the requirements of the TOIA, Texas law would permit the indemnity obligations contained in section 7.2 and 7.3 of the MSC.

Turning to federal law, the Fifth Circuit has explained the operation of section 905 of the LHWCA as follows:

> Section 905(b) prohibits indemnification by the employer of a covered employee for a claim due to bodily injury brought by the employee against the vessel (including its owner). 33 U.S.C. § 905(b). However, if the injured employee is entitled to receive the benefits of the LHWCA "by virtue of" § 1333(b) of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.,* then § 905(c) provides an exception, allowing "any reciprocal indemnity provision whereby the employer ... and the vessel agree to defend and indemnify the other for the cost of defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees." 33 U.S.C. § 905(c).

*Diamond Offshore Co. v. A&B Builders, Inc.,* 302 F.3d 531, 541 (5th Cir. 2002).[27]

---

[26]*Id.,* ¶ 20.2.

[27]Section 905 of the LHWCA provides, in pertinent part:
        (b) Negligence of vessel

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, *and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . .*

(c) Outer Continental Shelf

In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under this Act by virtue of section 1333 of Title 43, . . . [n]othing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person entitled to receive benefits under this chapter by virtue of section 1333 of Title 43 and the vessel agree to defend and indemnify the other for cost of defense and loss

Neither party contends Webb was entitled to receive benefits "by virtue of" OCSLA or that the section 905(c) exception to the prohibition on indemnity agreements applies in this case. Therefore, the only relevant provision of the LHWCA is section 905(b). CWE concedes that, standing alone, Frank's obligation to indemnify CWE and its invitee, Parker, are void pursuant to section 905(b) because it requires Frank's, a LHWCA employer, to indemnify a vessel. Nonetheless, CWE maintains that enforcement of the Texas choice of law provision is appropriate because there is no conflict between the TOIA and the LHWCA.

Citing *A&B Builders*, 302 F.3d at 548, *Sumrall v. Ensco Offshore Co.*, 291 F.3d 316, 325 n.12 (5th Cir. 2002), and *Voisin v. O.D.E.C.O. Drilling Co.*, 744 F.2d 1174, 1177 (5th Cir. 1984), CWE insists that federal law and Texas law do not conflict because insurance procurement clauses are valid pursuant to both 905(b) and section 127.005(b) of the TOIA. CWE's argument with respect to this point rests in large part on its attempt to equate Frank's obligation set forth in paragraph 6.3, which requires Frank's to name CWE as an additional insured on the National Union policy, with the obligations set forth in paragraphs 7.4 and 20.2, which require each party to procure insurance in order to directly support the parties' promises to indemnify each other. Although CWE correctly notes that "§ 905(b) does not invalidate an agreement requiring an employer to list a vessel owner as an additional insured," *LeBlanc v. Global Marine Drilling*, 193 F.3d 873, 875 (5th Cir. 1999)(citing *Voisin*, 744 F.2d at 1177), CWE erroneously reasons that since section 905(b) does not prohibit an obligation to name a party as an additional insured, federal law does not conflict with the TOIA which

---

or liability for damages arising out of or resulting from death or bodily injury to their employees.

33 U.S.C.A. § 905(emphasis supplied).

permits mutual indemnity agreements and concomitant contractual obligations to procure insurance in order to support such indemnity agreements.

First, CWE's reliance on *A&B Builders* and *Sumrall* is misplaced.  The legal issue in those cases was whether a unilateral insurance procurement clause affected the reciprocity of an indemnification agreement that was otherwise permissible pursuant to section 905(c).  *See A&B Builders*, 302 F.3d at 548;  *Sumrall*, 291 F.3d at 325 n.12 (5th Cir. 2002).  In this case, Frank's indemnification obligation is not permissible pursuant to section 905(c).  Therefore, any bearing that the insurance provisions contained in the MSC might have on whether the indemnity agreement is reciprocal, and thus valid pursuant to section 905(c), is simply irrelevant.

Second, and more importantly, CWE's argument is fundamentally flawed because it fails to recognize that Frank's obligation to procure insurance and name CWE as an additional insured pursuant to paragraphs 6.1 and 6.3 is distinct and severable from the parties' obligations to indemnify each other and procure insurance in order to directly support those indemnification obligations.  *See Coker v. Best Workover, Inc.*, 1993 WL 293268, at *11 (E.D.La. July 26, 1993)(distinguishing between an insurance clause that requires a party to obtain liability insurance in order to cover its indemnification obligation from an obligation to name a party as an additional insured).  Building on the erroneous premise that the two contractual obligations are functionally equivalent, the argument mischaracterizes the effect of an additional insured provision on the validity of an indemnification agreement pursuant to both Texas and federal law.

In *Voisin*, the Fifth Circuit held that an insurance procurement clause requiring a LHWCA employer to name a vessel owner as an additional insured was not a form of indirect liability proscribed by section 905(b).  744 F.2d at 1177.  However, the *Voisin* Court upheld the district court's

15

conclusion that the *indemnity* agreement requiring the LHWCA employer to indemnify the vessel owner was void because it directly contravened section 905(b).  *See id.*  In so doing, the Court reversed the district court's conclusion that an additional insured clause is the functional equivalent to an indemnity clause.  *Id.*  Subsequently, the Fifth Circuit explicitly held what was implicit in the holding of *Voisin*, i.e., that a valid additional insured provision creates an independent obligation that is severable from reciprocal indemnity agreement.  *A&B Builders*, 302 F.3d at 550.  Contrary to CWE's suggestion, none of these cases either expressly or implicitly held that the presence of an additional insured clause has any effect on the validity of an indemnity agreement that is otherwise prohibited by section 905(b).

Similarly, the Texas Supreme Court has distinguished an additional insured clause from mutual indemnity obligations that require each party to procure insurance to *support* such an indemnification agreement for purposes of section 127.005 of the TOIA.  *See Getty Oil Co. v. Ins. Co. of North America, NL*, 845 S.W.2d 794, 804 (Tex. 1992).  In *Getty*, the Texas Supreme Court held that section 127.005 applied exclusively to indemnity agreements and did not prohibit an additional insured provision.  *Id.*  The *Getty* court explained:

> Section 4(c) [now codified and amended at Tex.Civ.Prac. & Rem.Code § 127.005] does not prohibit "insurance shifting" schemes that do not fall within its parameters; rather it *permits* certain indemnity agreements if they are supported by liability insurance and meet the section's other requirements. The Anti-Indemnity statute does not purport to regulate any agreements for the purchase of insurance unless they are in support of indemnity agreements.

*Id.*  The *Getty* court rejected the argument that an additional insured provision, which appeared in a separate paragraph from an indemnification agreement, directly supported the indemnification agreement such that it met the requirements of section 127.005 of the TOIA.  *Id.* at 804.  Noting that

16

the indemnity agreement was "supported by an insurance provision separate from and additional to the additional insured provision," the court concluded that "the additional insured provision of the contract does not support the indemnity agreement, but rather is a separate obligation." *Id.* In light of *Getty*, CWE misstates the law when it argues that an additional insured provision is *valid* pursuant to section 127.005. Pursuant to *Getty*, an additional insured clause is not valid *pursuant to* the TOIA but, instead, it is valid pursuant to Texas law because it is a separate obligation that falls completely outside of the TOIA's purview.

The Fifth Circuit has also held that an insurance provision which appears in a separate section of a master service contract, and requires that only one party procure insurance, does not "support" an indemnity agreement for purposes of section 127.005 of the TOIA. *Greene's Pressure Testing*, 113 F.3d at 51. Analyzing a contract similar to the contract before this Court, the Fifth Circuit explained:

> Paragraph 6.1 of the MSC obligates only Greene, and not Flournoy, to purchase $500,000 of insurance, and thus it cannot be said that *each* party as indemnitor agreed to provide an *equal* amount of insurance to the other party as indemnitee, as required by subsection 127.005(b). Furthermore, the insurance requirement in paragraph 6.1 does not *support* the indemnity obligation, as required by subsection 127.005(a), because that paragraph explicitly states that the insurance obligation contained therein must be maintained "[w]ithout affecting the indemnity obligations or liabilities" of Greene and because that paragraph is found in an entirely different section of the MSC (6.0 Insurance) than are the indemnity provisions (7.0 Indemnity).

*Id.*

Paragraph 6.1 of the MSC obligates only Frank's, but not CWE, to purchase certain liability insurance set forth in Exhibit A of the MSC.[28]   Additionally, as in *Greene's*, the insurance

---

[28]Rec. Doc. No. 12, Ex. A, ¶ 6.1.

requirement in paragraph 6.1 does not *support* the indemnity obligation, as required by subsection 127.005(a), because that paragraph explicitly states that the insurance obligation contained therein must be maintained "[w]ithout affecting the indemnity obligations or liabilities" of Frank's and because that paragraph is found in an entirely different section of the MSC (6.0 Insurance) than are the indemnity provisions (7.0 Indemnity). The obligations of the parties to procure insurance to *support* the indemnity provisions are set forth in paragraphs 7.4 and 20.2 of the MSC. In contrast, paragraph 6.3 obligates Frank's to name CWE as an additional insured only with respect to "such insurance" required by section 6.0 (Insurance). As in *Greene's*, Frank's obligation to name CWE as an additional insured on the National Union policy is severable from Frank's indemnity obligation and the concomitant obligation to support that indemnity agreement with adequate insurance. In short, CWE's attempt to equate the two types of insurance procurement obligations is unpersuasive.

Applying the principles discussed above, the obligations in the MSC requiring each party to procure insurance to *support* its indemnification obligations, contained in sections 7.4 and 20.2, are independent and distinct from Frank's obligation to procure insurance and name CWE as an additional insured pursuant to paragraphs 6.1 and 6.3. The existence of a valid and enforceable additional insured clause is, therefore, simply immaterial to the question of whether Frank's indemnification obligation is enforceable pursuant to either section 905(b) of the LHWCA or section 127.005 of the TOIA. Therefore, the additional insured clause has no bearing on whether a conflict exists between the LHWCA and TOIA with respect to the enforceability of Frank's *indemnification* obligation.

One of the fundamental purposes of section 905(b) is to permit a longshoreman to sue a vessel for its own negligence and to protect a longshoreman's employer from a claim of indemnity by the vessel. *See In re ADM/Growmark River System, Inc.*, 234 F.3d 881, 888 (5th Cir. 2000)(outlining

18

the broad purposes of the 1972 amendments to the LHWCA and stating that by amending the

LHWCA, "Congress declared invalid as a matter of public policy any contractual provision that

imposes tort liability on employers of longshoreman that would otherwise be immune from tort

liability"). The indemnity provision in the MSC obligates Frank's, a LHWCA employer, to indemnify

CWE or its invitee, Parker, both "vessels" within the meaning of the LHWCA. To the extent that the

TOIA validates such indemnification obligations which are, *inter alia*, mutual and supported by

liability insurance, the TOIA directly conflicts with section 905(b) of the LHWCA. Section 905(b),

unlike section 127.005, makes no exception to its prohibition of such indemnity agreements even if

such agreements are supported by liability insurance. Because the TOIA conflicts with section 905(b)

on the particular facts present in this case, the choice of law clause will not be enforced and Texas

law does not govern the enforceability of the indemnity agreement.[29]

III.    *The Additional Insured Clause*

A.

As noted above, paragraph 6.1 of the MSC requires Frank's to maintain certain insurance

coverage "[w]ithout affecting the indemnity obligations or liabilities" of Franks.  Paragraph 6.3

requires Frank's to carry and maintain such insurance throughout the term of the MSC.  Paragraph 6.3

further provides:

---

[29] To the extent that neither the LHWCA nor TOIA prohibits a valid additional insured clause, the contractual choice of law clause might arguably apply to the interpretation of the additional insured clause. However, in its argument to this Court pertaining to the construction and interpretation of the additional insured clause contained in paragraph 6.3 of the MSC, CWE relies primarily upon a federal maritime case, *See LeBlanc*, 193 F.3d at 875. By doing so, CWE has waived reliance on the choice of law provision with respect to the interpretation of the additional insured clause. *See Hanson Eng'rs Inc. v  UNECO, Inc.*, 64 F.Supp.2d 797,799 (C.D.Ill. 1999)("Even where a contract does contain an explicit choice of law provision, parties waive reliance on that provision if they rely on federal law in their argument to the Court.")(citing *Poplar Mfg. Corp. v. Michael Weineg, Inc.*, 994 F. Supp. 1012, 1014-15 (E.D.Wis. 1998)).  This Court, therefore, applies federal common law principles applicable to the construction of this maritime contract.  In any event, the Court notes that CWE does not rely on any interpretive principles unique to Texas law with respect to its argument pertaining to the additional insured clause.

> Additionally, to the extent [Frank's] assumes liability hereunder, and agrees to indemnify [CWE], [CWE] shall be named an additional insured in all such insurance policies . . . with all such insurance being primary to any insurance of [CWE] that may apply to an [sic] such occurrence, accident or claim.

Neither party disputes that Frank's obtained the National Union policy in accordance with paragraph 6.1. Furthermore, there is no serious dispute that, as a matter of law, paragraph 6.3 sets forth a valid and enforceable independent obligation on the part of Frank's to name CWE as an additional insured in the National Union policy notwithstanding that Frank's direct obligation to indemnify CWE or its invitee, Parker, is void pursuant to section 905(b). *See A&B Builders*, 302 F.3d at 551(holding that an agreement to name a party as an additional insured may create an independent obligation notwithstanding that an indemnification provision is void); *LeBlanc*, 193 F.3d at 875 (holding that section 905(b) "does not invalidate an agreement requiring an employer to list a vessel owner as an additional insured"); *Voisin*, 744 F.2d at 1177. There is also no dispute that Frank's named CWE as an additional insured on the National Union policy. Instead, the primary dispute between Frank's and CWE pertains to the scope of the insurance coverage that Frank's was required to provide pursuant to paragraph 6.3.

Citing the Fifth Circuit's decision in *LeBlanc*, 193 F.3d at 875, CWE argues that Frank's was obligated to name CWE as an additional insured on an insurance policy that would provide coverage to CWE not only for its own tort liability, but also for the tort liability of its invitees, including Parker. In *LeBlanc*, a Frank's employee was injured while performing work for Shell Oil Company on a drilling rig owned by Marine Drilling Management Company. *Id.* at 874. There was a contractual dispute as to whether Marine was an additional insured under its master service agreement with Frank's. *Id.* Among other arguments, Frank's maintained that the validity of the additional insured

20

provision was contingent upon the validity of the indemnity provision, which was barred by section 905(b) of the LHWCA. *Id.* at 875. Frank's relied upon the following contractual language: *"[T]o the extent Subcontractor [Frank's]* assumes liability hereunder, and *agrees to indemnify Contractor [Marine],* Contractor shall be named an additional insured in [certain] insurance policies." *Id.* (alterations in original). The Fifth Circuit noted that the contract did not require a valid indemnity agreement as a precondition to one obtaining assured status. *Id.* Therefore, the Fifth Circuit held:

> Consequently, we conclude that Frank's obligation to list Marine as an additional assured automatically arose upon its agreement to indemnify Marine in paragraph 7.2. *The language of indemnification defines the parameters of the agreement regarding assured status.* If the parties had determined to condition Marine's assured status upon the legal enforceability of the indemnity agreement, they very easily could have done so. Under the contractual language as agreed to, however, the MSA may not reasonably be construed as Franks's proposes.

*Id.* (emphasis supplied).

Relying on the language in *LeBlanc* italicized above, CWE argues that *LeBlanc* dictates that the scope of Frank's indemnification obligation "defines the parameters" of the insurance coverage that Frank's was obligated to procure for CWE's benefit pursuant to the additional insured clause. CWE misreads *LeBlanc*. The *LeBlanc* court stated only that "the language of indemnification defines the parameters of the agreement regarding *assured status*." *Id.* (emphasis supplied). The Fifth Circuit did not hold as a matter of law that the language of an indemnification provision always defines the parameters of the agreement regarding additional insured *coverage*. In this case, unlike *LeBlanc*, there is no question pertaining to CWE's *status* as an additional insured nor is there any dispute that Frank's had an obligation to name CWE as additional insured in the National Union policy. Instead, the issue in this case is whether Frank's was required to name CWE as an additional insured on the

21

National Union insurance policy not only for Frank's indemnity obligation to CWE, but also for

CWE's independent obligation to indemnify Parker, an issue not present in *LeBlanc*.  An application

of *LeBlanc* to the present case dictates only that because Frank's had an obligation to indemnify CWE,

it also had an obligation to name CWE as an additional insured notwithstanding that Frank's direct

indemnity obligation was unenforceable pursuant to § 905(b).  Therefore, contrary to CWE's

argument, the *LeBlanc* decision does not resolve the contract interpretation issue present in this case.

Instead, this Court looks to the language used by the parties in paragraph 6.3 in order to determine

the scope of insurance coverage Frank's was obligated to procure.

B.

Interpretation of the terms of a contract is a matter of law.  *Lirette v. Popich Bros. Water*

*Transport, Inc.,* 699 F.2d 725, 728 n.11 (5th Cir.1983); *see also City of Austin v. Decker Coal Co.,*

701 F.2d 420, 425 (5th Cir.1983); *Matador Drilling Co. v. Post,* 662 F.2d 1190, 1195 (5th Cir.1981).

A maritime contract containing an indemnity agreement should be read as a whole and its words

given their plain meaning unless the provision is ambiguous.  *Hardy v. Gulf Oil Corp.*, 949 F.2d 826,

834 (5th Cir. 1992); *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984); *Lirette,* 699

F.2d at 728 n.11 (5th Cir.1983).

To reiterate, paragraph 6.3 states that "to the extent [Frank's] assumes liability hereunder, and

agrees to indemnify [CWE], [CWE] shall be named an additional insured in all such insurance

policies . . . ."  Paragraph 7.2, the indemnity provision, provides in pertinent part:

> [Frank's] agrees to protect, defend, indemnify and hold harmless
> [CWE] . . . or [its] invitees . . . from and against all claims, demands,
> and causes of action of every kind and character without limit and
> without regard to the cause or causes thereof or the negligence or fault
> . . . of any party or parties . . . arising in connection herewith in favor

22

of [Frank's] employees . . . on account of bodily injury . . . .[30]

CWE does not contend that Frank's was required to name its "invitees" as additional insureds pursuant to paragraph 6.3. Instead, CWE argues that because Frank's agreed to defend and indemnify CWE for the tort liability of CWE *and* its invitees in paragraph 7.2, that is "the extent" of Frank's assumed liability "hereunder." Therefore, CWE reasons that Frank's was obligated to procure insurance that would provide coverage to CWE as an additional insured not only for its own tort liability, but its invitee's (Parker's) tort liability. Although CWE's argument is phrased in terms of Frank's dual obligations to indemnify both CWE and CWE's invitee (Parker) pursuant to the indemnity provision, CWE's argument is simply an alternative way of phrasing a claim that Frank's was obligated to name CWE as an additional insured for its independent contractual obligation to indemnify Parker. Absent CWE's independent obligation to indemnify its invitee, Parker, it would be illogical for Frank's to name *CWE* as an additional insured and provide insurance coverage *to CWE* for Parker's tort liability.

Frank's maintains that the extent of Frank's obligation to name CWE as an additional insured encompassed only an obligation to name CWE an additional insured for its own tort liability. Frank's argues that there is no language in the MSC that requires Frank's to name CWE an additional insured for the tort liability of any of CWE's invitees or for CWE's contractual obligations to indemnify any of its invitees.

The Court agrees with Frank's that the plain language of 6.3 only requires Frank's to name CWE an additional insured to the extent that it assumed liability pursuant to its obligation to indemnify CWE. Paragraph 6.3 does not state that Frank's agreed to name CWE as an additional

---

[30]*Id.*, ¶ 7.2 (alteration in original).

insured to the extent Frank's agreed to indemnify any of CWE's invitees. Therefore, the dispositive issue before this Court with respect to Frank's obligation to name CWE as an additional insured is whether paragraph 6.3 required Frank's to name CWE as an additional insured on an insurance policy that would provide coverage for CWE's contractual obligation to indemnify Parker.

C.

Pursuant to the plain language of paragraph 6.3, Frank's was required to name CWE as an additional insured to the extent that Frank's agreed to indemnify CWE. Accordingly, this Court's determination with respect to the scope of Frank's obligation turns on the language of the indemnity provision set forth in paragraph 7.2.[31]

"A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). In *Corbitt*, the Fifth Circuit stated that "express notice is required where a party seeks to shift his contractual liability to indemnify a third party." *Id.* However, the *Corbitt* court also noted that "[t]he contract need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities. We hold only that it must clearly express such a purpose." *Id.* at 334.

---

[31]The Court emphasizes that by analyzing Frank's additional insured obligation by reference to the language of the indemnity provision, and by relying on cases pertaining to indemnity provisions, the Court does not expressly or implicitly hold that Frank's obligation to indemnify either CWE or Parker pursuant to paragraph 7.2 is enforceable in this case. As noted above, there is no dispute that Frank's direct obligations to indemnify CWE or its invitee, Parker, are void and unenforceable pursuant to 905(b). Rather, such an analysis is required by the terms of the contract.

24

In *Corbitt*, the contract provided in pertinent part:

> Contractor [Sladco, Inc.] shall indemnify and defend Shell Oil Company and its employees and agents against all claims, suits, liabilities and expenses on account of injury or death of persons (including employees of Shell or Contractor, and sub-contractor and their employees) or damage of property arising out of or in connection with performance of this Order . . . .

*Id.* at 331 (alteration supplied).   Confronting Shell's argument that the provision covered its contractual obligation to indemnity a third-party drilling contractor, the Fifth Circuit stated:

> The Purchase Order, however, does not expressly provide that Sladco will indemnify Shell for Shell's contractual liability to third persons. The Sladco-Shell agreement simply provides for indemnity "against all claims, suits, liabilities and expenses *on account of personal injury ...* arising out of or in connection with performance of this Order ..." (emphasis supplied). But Shell's liability to Diamond M is not on account of personal injury. Rather, it is on account of its agreement to indemnify Diamond M under Article X of the Offshore Drilling Workover Contract. Since the Purchase Order does not specifically provide that Sladco assumes claims arising from Shell's own separate contractual obligations, such indemnification is not required.
>
> Nor can it be said that Shell's contractual duty to indemnify Diamond M. is the kind of liability which the parties to the Purchase Order intended to include within the scope of Sladco's duty to indemnify Shell. Apart from any contractual undertaking to the contrary, Sladco's exposure to liability for injuries sustained by its own employees would be limited by the relevant workers' compensation scheme. If Shell had intended that Sladco forego its limited liability for such injuries, Shell should have said so in clear, specific terms. In the absence of such explicit language, it is unreasonable to assume that Sladco intended to undertake such an unusual and surprising obligation.

*Id.* at 333.

Frank's argues that the MSC does not expressly provide that Frank's assumed liability for CWE's independent contractual liability to Parker and, therefore, the MSC does not meet the *Corbitt* standard.  Frank's maintains that the MSC only required Frank's to indemnify CWE for its own direct

25

tort liability.  CWE contends that *Corbitt* does not govern this case.  Instead, CWE points to the Fifth

Circuit's decision in  *Sumrall v. Ensco Offshore Co.*, 291 F.3d 316 (5th Cir. 2002).

In *Sumrall*, the issue was whether an indemnity provision in a contract entered into by

Premiere, Inc. ("Premiere") and Santa Fe Energy Resources, Inc. ("Santa Fe") evinced an intent to

cover Santa Fe's contractual obligation to indemnify a third party, Ensco Offshore Co. ("Ensco") for

a personal injury claim brought against Ensco by a Premiere employee. *Id.* at 317-18.  The provision

at issue in *Sumrall* provided:

> [Premiere] agrees to protect, *defend, indemnify,* hold, and save *[Santa Fe] and its ... employees ... contractors and subcontractors,* and all their ... employees ... harmless *from and against all claims,* losses, costs, demands, damages, suits, ... *and causes of action of whatsoever nature or character ... and whether arising out of contract, tort,* strict liability, unseaworthiness of any vessel, misrepresentation, violation of applicable law and/or any cause whatsoever, including, but not limited to, reasonable attorney's fees and other costs and expenses, without limit and without regard to the cause or causes thereof, which in any way arise out of or are related to this Contract (including, without limitation, the performance or subject matter of this Contract) and *which are asserted by or arise in favor of [Premiere]* or any of its agents, representatives, *or employees,* or [Premiere's] subcontractors or any of their employees (and/or their spouses or relatives) *due to bodily injury, death,* or loss of or damage to property, or any cause whatsoever ... *whether or not caused by the sole,* joint, and/or concurrent negligence, fault, strict liability, breach of contract, or *legal duty of [Santa Fe] or any other party indemnified hereunder,* the unseaworthiness of any vessel, or any cause whatsoever....

*Id.* at 319 n. 4.

Distinguishing the language of the indemnification provision with the provision at issue in

*Corbitt*, the Fifth Circuit held that the scope of Premiere's duty to indemnify Santa Fe was broader

than was the scope of Sladco's obligation to indemnify Shell in *Corbitt. Id.* at 320.  The Fifth Circuit

reasoned:

26

Section 15.1 does include language similar to that in the provision at issue in *Corbitt,* by which Premiere owes a duty to indemnify for obligations arising in favor of Premiere employees "due to bodily injury" or "death." However, unlike the provision at issue in *Corbitt,* Section 15.1 also includes language that clearly and expressly indicates Premiere's intent to indemnify Santa Fe for obligations "whether arising in ... tort" or "contract." Moreover, Section 15.1 includes additional, rather expansive, language that broadens Santa Fe's entitlement to indemnification for "all claims ... *of whatsoever nature* or character ... whether or not caused by the ... *legal duty of [Santa Fe]* ...." (emphasis added). Thus, Section 15.1 is distinguishable from the more narrowly drafted provision in *Corbitt,* and our reading of the more narrow provision in *Corbitt* does not control. Moreover, our reasoning in *Corbitt* suggests that Premiere owes indemnification to Santa Fe in the instant case for Santa Fe's contractual or legal duty to indemnify Ensco against Sumrall's injury claim.

*Id.* (emphasis in original). Additionally, the Fifth Circuit emphasized that "Section 15.1 expressly indicates Premiere's intent to indemnify not only Santa Fe, but also Santa Fe's 'contractors and subcontractors' for the covered obligations." *Id.* The Fifth Circuit stated that the express inclusion of Santa Fe's contractors and subcontractors "even more compellingly" indicated that Premiere owed indemnification to Santa Fe for its contractual obligation to Ensco. *Id.* The Court noted that "prior decisions by this court interpreting analogous indemnification provisions in like circumstances indicate that such language in Section 15.1 expresses clear intent by Premiere to indemnify Santa Fe for amounts paid due to an injury claim filed against Santa Fe's third-party contractor, Ensco." *Id.*[32]; *but cf. Campbell v. Sonat Offshore, Inc. (Campbell II),* 27 F.3d 185, 188 n.4 (5th Cir.

---

[32]The Fifth Circuit cited *Demette v. Falcon Drilling Co., Inc.,* 280 F.3d 492 (5th Cir. 2002); *Campbell I,* 979 F.2d at 1115; *Babcock v. Cont'l Oil Co.,* 792 F.2d 1346 (5th Cir. 1986)(per curiam); *Mills v. Zapata Drilling Co., Inc.,* 722 F.2d 1170 (5th Cir. 1983), *overruled on other grounds, Kelly v. Lee's Old Fashioned Hamburgers, Inc.,* 908 F.2d 1218 (5th Cir. 1990)(per curiam); and *Lirette v. Popich Bros. Water Transp., Inc.,* 699 F.2d 725 (5th Cir. 1983). Although many of these cases involved indemnity provisions that were enforceable, they are nevertheless persuasive with respect to the issue of whether Frank's intended to provide insurance coverage that would cover a personal injury claim brought against CWE's invitees by a Frank's employee.

27

1994)(concluding that the language of an indemnity provision was not broad enough to indemnify against a subcontractor's contractual obligations despite the inclusion of the subcontractor as a direct indemnitee).

The circumstances present in this case are similar to those in *Sumrall*. Frank's, CWE, and Parker, respectively, stand in the same relationship as did Premiere, Santa Fe, and Ensco in *Sumrall*. Furthermore, as in the present case, Premiere's direct indemnity obligation to Ensco had been held to be unenforceable pursuant to 905(b) by the district court. *See Premiere, Inc. v. Commercial Underwriters Ins. Co.*, 2003 WL 21634953, at 13 (E.D.La. July 9, 2003)(noting that prior to the appeal in *Sumrall*, the district court had held that Premier's indemnification obligation to Ensco was not reciprocal and thus void pursuant to 905(b)); *see also Sumrall*, 291 F.3d at 318 n.1 (noting that the district court's judgment dismissing Ensco's third-party claim against Premiere was not appealed). The indemnity agreement in the MSC obligates Frank's to "protect, defend, indemnify and hold harmless [CWE] . . . from and against *all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof* . . . arising in connection herewith in favor of [Frank's] employees . . . on account of bodily injury . . . ." Although the MSC contains language by which Frank's owed a duty to indemnify CWE for claims arising in favor of Frank's employees "on account of bodily injury," the provision also requires Frank's to indemnify CWE from "all . . . *demands* . . . of every kind and character without limit and without regard to the cause or causes thereof." That language is similar to the language that the Fifth Circuit found "expansive" in *Sumrall*. Moreover, the indemnity provision clearly expresses an intent to indemnify not only CWE, but also CWE's invitee, Parker.

The Court is cognizant that the language in the MSC does not contain an express reference

28

to indemnification for obligations "whether arising out of tort [or] contract" or by virtue of a "legal duty," language upon which the *Sumrall* court relied in part.  However, the Court does not find that the difference in the language is controlling in this case.  *See Corbitt*, 654 F.2d at 334 ("The contract need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities.").  Given the broad language in the MSC coupled with the express intent to indemnify both CWE and Parker, the Court finds that the MSC expressed an intent that Frank's would indemnify CWE against Parker's demand for defense and indemnity with respect to a personal injury claim brought against Parker by a Frank's employee.  Consequently, paragraph 6.3 required Frank's to procure insurance and name CWE an additional insured on a policy that would provide coverage for Webb's personal injury claim filed against Parker.  Such obligation included procuring insurance that covered CWE's contractual liability to indemnify another indemnitee specifically listed in the MSC, *i.e.*, CWE's "invitee" Parker, for a personal injury claim brought by a Frank's employee.

IV.          *The National Union Policy*

The parties agree that Louisiana contract interpretation principles apply to the construction of the National Union policy.[33]  An insurance policy is an agreement between the parties and it should be interpreted by using ordinary contract principles.  *Magnon v. Collins,* 739 So.2d 191, 196 (La. 1999) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 630 So.2d 759 (La. 1994)); *Ledbetter v. Concord Gen. Corp.*, 665 So.2d 1166, 1169 (La. 1996); *Smith v. Matthews*, 611 So.2d 1377, 1379 (La. 1993); *Dunn v. Potomac Ins. Co. of Illinois*, 657 So.2d 660, 663 (La. App. 1st Cir.

---

[33]Pursuant to a telephone status conference held on October 19, 2004, the parties clarified that Louisiana contract principles apply to the construction of the National Union policy.

1995). The Louisiana Civil Code provides that the interpretation of a contract "is the determination

of the common intent of the parties." La. Civ. Code art. 2045 (West 2002); see *Ledbetter*, 665 So.2d

at 1169; *Dunn*, 657 So.2d at 663.  The parties intent, as reflected by the words of the policy,

determines the extent of coverage under an insurance policy. *Ledbetter*, 665 So.2d at 1169.  The

intention of the parties is determined "in accordance with the general ordinary, plain and popular

meaning of the words used in the policy, unless the words have acquired a technical meaning." *Id.*;

see La. Civ. Code art. 2047 ("The words of a contract must be given their generally prevailing

meaning."); *Dunn*, 657 So.2d at 663.  Moreover, the parties' intent may be ascertained by "giving

consideration on a practical basis to the instrument in its entirety." *Dunn*, 657 So.2d at 663.

　　If the language in an insurance contract is clear and unambiguous, the agreement must be

enforced as written. *Marcus v. Hanover Ins.* Co., 740 So.2d 603, 606 (La. 1999); *Smith*, 611 So.2d

at 1379; *Dunn*, 657 So.2d at 663; see also La. Civ. Code art. 2046.[34]  If there is any doubt or

ambiguity as to a provision in an insurance contract, Louisiana law applies a rule of "strict

construction" that requires that any doubt or ambiguity in an insurance contract be construed in favor

of coverage to the insured and against the insurer who issued the policy. *Louisiana Ins. Guar. Ass'n*,

630 So.2d at 764; see also La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise

resolved, a provision in a contract must be interpreted against the party who furnished its text.");

*accord Valentine v. Bonneville Ins. Co.*, 691 So.2d 665, 668 (La. 1997);  *Crabtree v. State Farm Ins.*

*Co.*, 632 So.2d 736, 741 (La. 1994).  If an ambiguity exists, a court should "construe the policy 'to

fulfill the reasonable expectations of the parties in the light of the customs and usages of the

---

[34]La. Civ. Code art. 2046 provides that "[w]hen the words of a contract are clear and explicit and lead to no
absurd consequences, no further interpretation may be made in search of the parties' intent."

industry.'" *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 764 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. America*, 916 F.2d 267, 269 (5th Cir. 1990)); *see Breland v. Schilling*, 550 So.2d 609, 610-11 (La.1989) ("Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.").[35]

The National Union policy obligates National Union to provide coverage "that the Insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."[36] However, the National Union policy excludes coverage for "'[b]odily injury' . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."[37] However, an exception to the contractual liability exclusion exists for liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract' . . . ."[38] An "insured contract" is defined in the policy as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization."[39] The policy further provides that "[t]ort liability means a liability that would be imposed by law in the absence of any contract or agreement."[40]

------

[35]The Louisiana Supreme Court has explained: "The reasonable expectations doctrine can be capsulized as follows: 'courts will protect the [insured's] reasonable expectations . . . regarding the coverage afforded by insurance contracts even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer.'" *Louisiana Ins. Guar. Assoc.*, 630 So.2d at 764 n.9 (quoting R. Keeton and A. Widiss, *Insurance Law* § 6.13 (1988) (alteration in original)). However, the reasonableness of an insured's expectation of coverage is a function of the purposes underlying the kind of policy in question and whether the expected coverage constitutes a reasonably bargained-for risk. *See id.* at 767-69 (rejecting the reasonable expectations doctrine as applied to an expectation of drop-down coverage in excess insurance policies).

[36]Policy, at 1.

[37]*Id.*

[38]*Id.*

[39]*Id.*, at 11.

[40]*Id.*

31

CWE contends that the National Union policy provides coverage for Frank's direct obligation to indemnify CWE's invitee, Parker, because the MSC is an "insured contract" within the terms of the policy.  Alternatively, CWE claims that the CWE/Parker contract is an "insured contract" because CWE, as an additional insured, is entitled to contractual liability coverage pursuant to the National Union policy.  National Union has not opposed CWE's motion with respect to the argument that the MSC is an "insured contract."  Instead, National Union's opposition and its own summary judgment motion are focused on the argument that CWE is not entitled to contractual liability coverage as an additional insured because only Frank's, the named insured, is entitled to contractual liability coverage.

Frank's responded to CWE's argument that the MSC is an "insured contract" by arguing that because Frank's direct indemnification obligations to CWE and Parker in the MSC are void pursuant to § 905(b), the MSC does not qualify as an "insured contract" because there can be no insured contractual obligation to which coverage may apply.  Because, as explained below, the Court concludes that the National Union policy provides coverage for Webb's claim against Parker on the ground that the MSC is an "insured contract," the Court need not reach CWE's alternative argument that CWE's status as an additional insured entitles CWE to contractual liability coverage.[41]

A.    *The MSC as an Insured Contract*

In *Mid-Continent Casualty Co. v. Swift Energy Co.*, 206 F.3d 487, 493 (5th Cir. 2000), the Fifth Circuit noted that it is "highly unclear" that a master service contract's status as an "insured

---

[41]Additionally, CWE represents that whether Frank's breached its obligation to provide the required insurance pursuant to the MSC is an issue only if the National Union policy does not provide coverage for Webb's claim against Parker.  Because this Court concludes that the National Union policy provides such coverage, the Court does not address CWE's breach of contract theory.

contract" pursuant to an insurance policy would be affected if the underlying indemnity obligations in the master contract were unenforceable. *Id.*[42] After noting the lack of case law addressing the effect of an unenforceable indemnity obligation on insured contract coverage, the Fifth Circuit stated that "[b]oth sides have feasible arguments." *Id.* The Fifth Circuit noted that a reasonable argument in such circumstances is that insurers should simply draft clear policy language if they wish to exclude from the definition of "insured contract" an indemnity provision which proves unenforceable. *Id.* (citing Douglas R. Richmond & Darren S. Black, *Expanding Liability Coverage: Insured Contracts and Additional Insureds*, 44 DRAKE L. REV. 781, 793 (1996)). On the other hand, the Fifth Circuit noted that if the indemnity provisions in a master service contract were unenforceable, tort liability was never actually assumed. *Id.* Therefore, a master service agreement containing an unenforceable indemnity agreement would arguably not be an insured contract. *Id.*

The Fifth Circuit ultimately concluded in *Mid-Continent* that in light of the rule that ambiguous policy language should be construed to find coverage, "the lack of relevant precedent and the existence of strong opposing arguments appear to dispose of [the insurer's] argument that the [master service agreement] is not an 'insured contract,' even if we grant the assumption that the [master service agreement's] indemnity provisions are invalid . . . ." *Id.*[43] The Fifth Circuit also

---

[42]Although the Fifth Circuit addressed whether a master service contract was an insured contract when the indemnification provisions were invalid pursuant to Texas law, the *Mid-Continent* court's rationale has been applied by another court in this district when an indemnification provision was invalidated pursuant to § 905(b). *See Premiere*, 2003 WL 21634953, at *3.

[43]The Fifth Circuit further stated:
> Out of an abundance of caution, we nevertheless assume without deciding that, if the MSA's indemnity provisions were clearly invalid under or offensive to the TOIA, it might affect the MSA's status as an "insured contract" under the Policy.

*Mid-Continent*, 206 F.3d at 493. The *Premiere* court interpreted as dicta the foregoing statement and the Fifth Circuit's subsequent discussion of whether the indemnification provisions in the master service contract at issue in that case were "clearly invalid." *See Premiere*, 2003 WL 21634953, at *7 n.6. As stated by the *Premiere* court, "[t]hat is so because this portion of the opinion was not necessary to resolve the dispositive issues before the Fifth Circuit and the court stated

rejected the insurer's argument that a contract could not be an "insured contract" because the indemnity provisions were never triggered. *Id.* at 496. Significant to the present case, the Fifth Circuit focused its analysis on the time of execution, stating that under a commercial liability policy, a master service contract becomes an "insured contract" upon execution. *Id.* The assumption of a third-party's tort liability in a master service contract is all that is needed. *See id.*

In a factually similar case, another district court in this district applied *Mid-Continent* and held that an unenforceable indemnification provision of a master contract does not preclude the contract from being an "insured contract" within the terms of an insurance policy. *Premiere*, 2003 WL 21634953, at *7. The *Premiere* court also rejected the insurer's argument that the definition of an "insured contract" depended upon the form by which the indemnity claim was tendered to the insured. *Id.* The court reasoned that the insured "clearly intended to purchase a commercial general liability insurance policy to cover the potential indemnity liability it had under the master contract . . . . It is unreasonable to believe that Premiere intended its coverage to be dependent upon which party is sued as a direct defendant." *Id.* at *8. Ultimately, the court concluded that notwithstanding that the insured's direct indemnification obligation to the alleged tortfeasor was previously held void pursuant to § 905(b), the master service contract was an insured contract because the policy was ambiguous and the insurer "could have written [the contractual liability exclusion] to expressly and unambiguously preclude coverage for underlying indemnification agreements that are subsequently

---

that it was not deciding at that time the legal effect of a clearly unenforceable indemnification provision on a master contract's status as an 'insured contract.'" *Id.* Accordingly, the *Premiere* court concluded that it was not bound by that portion of the Fifth Circuit's decision.

held to be unenforceable." *See id.* at *8.[44]

There is no dispute in this case that Frank's, as a named insured, was entitled to contractual liability coverage, pursuant to the National Union policy, for its assumption of tort liability in the MSC.  Additionally, as in *Premiere*, the definition of an "insured contract" is not expressly limited to contracts containing *enforceable* indemnity provisions.  *See id.*, at *7.  Instead, an "insured contract" is defined in the policy as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . .to a third person or organization."  In this case, Frank's clearly assumed the tort liability of CWE's invitee, Parker, in paragraph 7.2 of the MSC.  Accordingly, the MSC fits squarely within the policy's definition of an "insured contract."  Furthermore, had National Union intended that the contractual liability coverage afforded to Frank's be limited only to contracts containing enforceable indemnity agreements, it could have written the policy to clearly and unambiguously express that intention.  In light of the ambiguity in the policy, the Court concludes that the policy must be construed to afford coverage for Frank's direct obligation to indemnify CWE's invitee, Parker, for its tort liability to Webb notwithstanding the fact that Frank's indemnity obligation is unenforceable.

Moreover, pursuant to the MSC, the insurance coverage procured by Frank's pursuant to paragraphs 6.1 and 6.3, to which CWE was named an additional insured, is "primary to any insurance of [CWE's] that may apply" to a claim such as Webb's.  Even assuming that CWE is not entitled to

---

[44]The *Premiere* case arose subsequent to the Fifth Circuit's decision in *Sumrall*, 291 F.3d at 316, in which the Fifth Circuit held that the master service agreement's indemnity provision included an obligation that Premiere indemnify Santa Fe for its independent contractual liability to the alleged tortfeasor, Ensco.  However, Premiere's direct indemnification obligation to Ensco, parties that stand in similar positions to Frank's and Parker in the present case, was held unenforceable pursuant to § 905(b).  *See Premiere*, 2003 WL 21634953, at *3.  Therefore, the *Premiere* decision is squarely on point with respect to the issue of whether the MSC is an "insured contract" for purposes of Frank's direct indemnity obligation to Parker.

coverage under the National Union policy directly by virtue of its status as an additional insured, there is no language in the MSC that limits the primacy of the National Union insurance to coverage based upon CWE's additional insured status. Rather, paragraph 6.3 states that "all such insurance" procured by Frank's pursuant to paragraph 6.1 is "primary" to CWE's insurance that would otherwise apply to a claim such as Webb's claim against Parker and CWE.

In conclusion, the Court holds that the MSC is an "insured contract" within the meaning of the National Union policy and, therefore, National Union was obligated to provide coverage for Frank's employee's claim against Parker despite the fact that Frank's direct indemnification of Parker was unenforceable pursuant to § 905(b). As in *Premiere*, the fact that the defense and indemnification of Parker was tendered to Frank's and National Union indirectly through CWE does not preclude a finding that the MSC is an "insured contract."

Frank's suggests that because CWE is the plaintiff in this action, CWE's claim for reimbursement may only be based upon its status as an additional insured, i.e. CWE may recover the funds paid to settle Webb's claim only if the National Union policy provides additional insured coverage for CWE's contractual liability to Parker. The Court disagrees. Because both Frank's and National Union refused CWE's tender of defense and indemnity with respect to Webb's claim against Parker, CWE and its insurer, Scottsdale, were forced to pay money to Parker and incur expenses that would not have been owed had National Union undertaken defense and indemnity of Parker pursuant to its obligation to provide contractual liability coverage to Frank's. National Union cannot avoid providing the coverage afforded by the policy by denying the defense and indemnity of Parker and by claiming that CWE must establish additional insured coverage. The National Union policy is primary to CWE's insurance coverage and it covers Webb's claim against Parker. Accordingly, CWE

36

is entitled to reimbursement by National Union for the funds it paid Parker in settling Webb's claim against Parker and for the expenses CWE incurred defending Parker in the state court action filed by Webb against Parker.[45]

Accordingly, for the above and foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment filed on behalf of plaintiffs, Clayton Williams Energy, Inc. and Scottsdale Insurance Company, is **GRANTED.**

**IT IS FURTHER ORDERED** that the motion for summary judgment filed on behalf of defendant, Frank's Casing Crew & Rental Tools, Inc. is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for summary judgment filed on behalf of defendant, National Union Fire Insurance Company of Louisiana, is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs shall draft a proposed judgment consistent with this Order and Reasons and submit such proposed judgment to this Court **no later than November 10, 2004.**

New Orleans, Louisiana, November ____/____, 2004.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[45]Pursuant to a joint stipulation filed by the parties, National Union waived any defenses pertaining to the reasonableness of the settlement of Webb's claim for $907, 500. *See* Rec. Doc. No. 35. Additionally, National Union waived any defenses to the reasonableness of $96, 807.51 in defense costs incurred by CWE and Scottsdale in defending Webb's claim against Parker. *Id.*